IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BENJAMIN DAVIS,<br><br>        Petitioner,<br><br>vs.<br><br>BRANDON JONES, Superintendent,<br>Anchorage Correctional Complex,<br><br>        Respondent. | No. 3:20-cv-00274-JKS<br><br>MEMORANDUM DECISION |

Benjamin Davis, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Davis is in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at the Anchorage Correctional Complex. Respondent has answered, and Davis has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On October 26, 2006, Davis was charged with first-degree sexual assault (Count 1), four counts of second-degree sexual assault (Counts 2, 4-6), and kidnapping (Count 3). Davis denied the charges and proceeded to a jury trial. On direct appeal of his conviction, the Alaska Court of Appeals summarized the following facts underlying the charges against Davis:

> In August 2005, a disabled woman, N.N., was staying at the Brother Francis Shelter in Anchorage. Due to a spinal cord injury that N.N. suffered in a car accident, she had difficulty walking, she was unable to drive, and her mobility was generally limited: it would take her approximately 90 seconds just to get out of a vehicle.

-1-

On the morning of August 27th, N.N. was waiting on the street for someone to pick her up and drive her to her boyfriend's residence. Her ride never showed up, but around 12:30 p.m., Benjamin Davis (who was a stranger to N.N.) pulled up and offered her a ride. N.N. accepted a ride from Davis, and he drove her to her boyfriend's residence, but no one was there when they arrived.

Davis then invited N.N. to come with him to the Park–N–Sell (because Davis was apparently looking to purchase a car). Davis told N.N. that he would drive her back to her boyfriend's residence after they looked at cars.

After spending thirty to forty-five minutes at the Park–N–Sell, Davis and N.N. went to a gas station and purchased sodas. N.N. asked Davis to drive her back to her boyfriend's residence, but Davis told her that "he wouldn't" because "nobody was there." Instead, Davis drove N.N. to two or three locations near Eklutna and Thunderbird Falls.[FN1] At each of these locations, Davis sexually assaulted N.N.. N.N. told Davis, "No—don't do this to me," but Davis told N.N. that if she did not comply, she would never see her daughter again.

> FN1. N.N.'s testimony throughout the trial was frequently conflicting and difficult to follow. It often seemed like she did not understand the questions she was being asked because she would answer a question one way, and then give a completely different response when the question was rephrased. In her conversations with police and prosecutors prior to trial, she identified two locations near Eklutna and Thunderbird Falls where Davis had taken her; at trial she insisted there were three locations: Eklutna, Thunderbird Falls, and "Chugach State Park".

At one of these locations, Davis tried to pull N.N. out of the car by her arm, but N.N. resisted. She refused to leave the car because she feared that Davis would "do something to [her] out in the trees, [and then] leave [her] out there."

After the sexual assaults near Eklutna and Thunderbird Falls, Davis took N.N. back to Anchorage. Davis drove to a pizza restaurant in Government Hill called Ski & Benny's. Davis told that cashier that N.N. was his wife, and that they had lost their luggage and their money. Out of sympathy, the cashier gave them pizza for free. Davis then drove N.N. to Ship Creek. They stopped there to eat the pizza, and Davis again sexually assaulted N.N.. Davis forced N.N. to put a Tropicana juice bottle in her vagina while he masturbated. Davis also forced N.N. to touch her own breasts, and Davis ejaculated on N.N.'s pants. N.N. was crying uncontrollably, and Davis threatened to lock her in a large metal storage container if she did not stop crying.

At one point, N.N. tried to escape, but Davis grabbed her arm and told her, "If you ever try to run away, I'm going to put you in that container [and] you won't see your daughter ever again." Then Davis got out of the car, went around to the passenger's side, and slammed N.N.'s door shut. He also warned her not to try to escape again "or else I'll kill you".

Davis kept N.N. in the car with him at Ship Creek all night. Finally, around 8:00 or 8:30 the next morning, Davis took N.N. back to the Brother Francis shelter. Davis told N.N. not to tell anyone what happened, or he would come find her.

Despite Davis's threats, N.N. told someone who was staying at the shelter what Davis had done to her, and that person convinced N.N. to contact the police. Anchorage Police Officer Robert Wurst responded to the call. Officer Wurst drove N.N. to Ship Creek. There, with N.N.'s assistance, Wurst collected evidence: soda bottles, the Tropicana bottle, and used paper napkins. N.N. also gave Wurst a copy of Davis's resume, which she had taken from Davis's car. Wurst then took N.N. to the hospital.

> At the hospital, N.N. underwent a sexual assault examination. She had bruises on her arms from Davis's attempt to pull her out of the car, and from Davis grabbing her arm to prevent her escape at Ship Creek. The state crime lab found N.N.'s DNA on the Tropicana bottle cap, and the lab found DNA from some other person on N.N.'s nipples, as well as sperm on N.N.'s panties. The DNA recovered from N.N.'s nipples and the sperm recovered from her panties were later matched to Davis.
> Later, when Anchorage Police Detective John Vandervalk interviewed Davis, Davis denied everything: he declared that he had not picked up anyone in his car, and he denied even seeing anyone on crutches.

*Davis v. State*, No. A-10144, 2011 WL 2183931, at *1-2 (Alaska Ct. App. June 1., 2011).

The record reflects that the prosecution was unaware that Davis had taken N.N. to the pizza parlor in between the sexual assaults at Eklutna/Thunderbird Falls and Ship Creek until shortly before trial when a detective and the prosecutor took N.N. to the places she had gone with Davis in order to jog her memory. The Court of Appeals laid out the following factual background for the prosecution's discovery of that fact:

> Until just before Davis's trial, the prosecutor and police did not know that Davis had taken N.N. to a pizza parlor between the sexual assaults that occurred in the Eklutna/Thunderbird Falls area and the sexual assaults that occurred at Ship Creek. N.N. had not mentioned the stop at the pizza parlor when she described what happened to her. As we mentioned in the preceding section of this opinion, when Officer Wurst went to Ship Creek with N.N. to collect evidence of the sexual assaults, he found used paper napkins. Wurst asked N.N. about the napkins, and N.N. replied that they were the napkins that Davis used while eating pizza. But neither Wurst nor any other police investigator thought to ask N.N. where the pizza came from.
> Shortly before trial, in order to refresh N.N.'s memory (in preparation for her testimony), Detective Vandervalk and the prosecutor took N.N. to the places she had gone with Davis. For the first time, N.N. mentioned that Davis had driven her to Ski & Benny's pizza parlor in Government Hill. N.N. described how she had gone into the pizza parlor with Davis, and she conceded that she had not tried to escape or call for help.
> The prosecutor did not notify Davis's defense attorney of N.N.'s description of the visit to the pizza parlor because the prosecutor believed that the defense attorney was already aware of this information. When Detective Vandervalk went into the pizza parlor (after N.N. stated that she and Davis had gone there), Vandervalk saw a defense investigator's business card, as well as photographs of Davis and N.N.. Detective Vandervalk talked to one of the owners of the pizza parlor, and the owner told Vandervalk that he had already been interviewed by a defense investigator. The owner informed Vandervalk that no one at the pizza parlor had any recollection of the incident—and that the defense investigator had been told the same thing.

*Davis*, 2011 WL 2183931, at *2.

When the prosecutor tried to clarify N.N.'s testimony about the pizza parlor issue at trial, she mentioned the witness preparation trip that N.N. had taken with Detective Vandervalk.

-3-

Defense counsel complained that the defense had not been notified of the witness preparation trip. Counsel acknowledged that the defense was aware of the underlying event on the night in question, *i.e.*, that Davis and N.N. had gone to a pizza parlor that night, but it had not been informed that N.N. was taken back to the pizza parlor two years later. Counsel argued that the discovery violation was exculpatory, and that its suppression materially prejudiced Davis.

The trial court ordered the State to submit to the defense a report on the witness preparation trip. Defense counsel proposed a curative instruction, which the trial court rejected before ultimately granted an alternative instruction. Based upon that ruling, the defense moved for dismissal. The court denied the motion, and the trial proceeded with the reading of the curative instruction. At the conclusion of trial, the jury found Davis guilty as charged. He was subsequently sentenced to a composite sentence of 75 years to serve.

Through counsel, Davis appealed his conviction, arguing that Davis was denied due process when the prosecution failed to disclose N.N.'s witness preparation trip, which he argued revealed the fact that the prosecution now knew that N.N. had entered the parlor without calling for help or trying to escape. The Court of Appeals unanimously affirmed the conviction against Davis in a reasoned, unpublished opinion issued on June 1, 2011, which concluded that the undisclosed evidence did not constitute *Brady*[1] material. *Davis*, 2011 WL 2183931, at * 9. More than three years after the Court of Appeals issued its decision, Davis filed a *pro se* petition for review in the Alaska Supreme Court. Docket No. 8-7. On November 24, 2014, the Supreme Court notified Davis that the petition was not timely under Appellate Rule 521,[2] and refused the petition for filing.

The records of this Court reflect that Davis then filed here a *pro se* Petition for Writ of Habeas Corpus, dated December 13, 2015. Docket No. 1, Case No. 3:15-cv-00252-TMB. This

---

[1] *See Brady v. Maryland*, 373 U.S. 83 (1962). *Brady* and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

[2] The Alaska Supreme Court is not authorized to allow a petition for hearing filed more than sixty days after the Court of Appeals' determination. ALASKA R. APP. PROC. 521(2).

-4-

Case 3:20-cv-00274-JKS   Document 17   Filed 03/17/21   Page 4 of 11

Court, through a judge other than the undersigned, ultimately dismissed that case without prejudice on March 30, 2016, for lack of total exhaustion of state court remedies.³ *Id.*, Docket No. 7.

Davis subsequently filed in the Alaska Superior Court a *pro se* application for post-conviction relief ("PCR") under Alaska Criminal Rule 35.1, dated January 11, 2017. After PCR counsel was appointed to evaluate whether a statutory-time bar applied to Davis's case, the State moved to dismiss the PCR application as untimely because it was not filed within one year of the Court of Appeals' decision affirming Davis's conviction. Davis opposed the motion, arguing that he should not be subject to the limitations period due to his poor health and because he had directed appellate counsel to file a petition for review, and counsel had not complied. The trial court granted the State's motion to dismiss on the ground that Davis's application was time-barred. Through counsel, Davis appealed the denial, arguing that his delay in filing the PCR application should be excused under the doctrine of equitable tolling because it resulted from his attorney's ineffectiveness. The Court of Appeals rejected that argument in an unpublished summary disposition issued on April 22, 2020, on the ground that Davis failed to establish that he had exercised due diligence sufficient to warrant an equitable exception to the statute of

---

³ As the Court explained to Davis in that case, this Court may not consider claims that have not been fairly presented to the State courts. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Specifically, pursuant to 28 U.S.C. § 2254(b)(1)(A) and (B), before a court may grant a Writ of Habeas Corpus on behalf of a person in custody pursuant to the judgment of a State court, the petitioner must either (A) exhaust "the remedies available in the courts of the State" or (B) show "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." To satisfy the "fairly present" requirement, the petitioner actually must present his or her federal claim to "each appropriate court (including a state supreme court with powers of discretionary review)" so that the each court is alerted to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam). In Alaska, this means that claims must first be presented to the Alaska Superior Court. If the petitioner disagrees with that result, the claim should be raised to the Alaska Court of Appeals, and if he disagrees with that result, the claim should be raised in a petition for hearing to the Alaska Supreme Court.

limitations. Docket No. 8-12 at 3. Davis timely filed a petition for hearing in the Alaska Supreme Court, which was summarily denied on September 23, 2020. *Id.* at 1.

Davis then filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court, dated April 22, 2020. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1),(2). Briefing is now complete, and the Petition is ripe for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Davis argues, as he did in his PCR application in the state appellate courts, that his attorney on direct appeal rendered ineffective assistance by not filing in the Alaska Supreme Court a petition for hearing following the Court of Appeals' affirmance of his conviction.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Respondent urges the Court to dismiss Davis's Petition as untimely. The AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Davis does not dispute that his Petition is facially untimely. He nonetheless argues that the time bar should not apply here due to appellate counsel's ineffectiveness.

In *Holland v. Florida*, the Supreme Court held "that § 2244(d) is subject to equitable tolling in appropriate cases."[4] 560 U.S. 631, 645 (2010) (citations omitted). But equitable tolling is permitted only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 639 (citation omitted). The Supreme Court held in *Holland* that a petitioner must exercise "reasonable diligence" in pursuing his available remedies. *Id.* at 653; *see also Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2012) ("The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'") (quoting *Holland*, 560 U.S. at 653) (further internal quotation marks omitted); *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011) ("The standard for reasonable diligence does not require an overzealous or extreme pursuit of

---

[4] Tolling means that the statute of limitations may not run for a period of time. *See* BLACK'S LAW DICTIONARY (10th ed. 2014).

any and every avenue of relief.") (citation omitted). The Ninth Circuit has explained that, "[t]o determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." *Busby*, 661 F.3d at 1013 (citation omitted).

The Supreme Court found in *Holland* that a petitioner's repeated attempts to contact his attorney or have him removed from the case showed a diligent effort to avoid the running of the statute of limitations. The Court noted that "the very day that [the petitioner] discovered that his AEDPA clock had expired due to [his attorney's] failings, [the petitioner] prepared his own habeas petition pro se and promptly filed it with the District Court." *Holland*, 560 U.S. at 653.

The record here, however, reflects a level of diligence falling far short of that shown in *Holland*. As the Court of Appeal reasoned in affirming the superior court's dismissal of Davis's PCR application as time-barred, "[e]ven assuming Davis exercised diligence in the time period between when [the Court of Appeal] issued a decision on his direct appeal and when he learned his appellate attorney had not filed a petition for hearing in the Alaska Supreme Court, at least two more years passed before Davis filed his application for post-conviction relief." Docket No. 8-12 at 3. Accordingly, the Petition is untimely and must be dismissed with prejudice on that ground. *See Herbst v. Cook*, 260 F.3d 1039, 1043 (9th Cir. 2001).

In any event, even if Davis's Petition were timely, he is not entitled to relief on its merits. Under clearly established federal law, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). Extending this into habeas proceedings, the Ninth Circuit has concluded:

> that a defendant's reliance on his counsel to file a direct appeal is sufficient cause to excuse the defendant's procedural default in failing to file a timely post-conviction relief petition, *provided that* the defendant establishes (1) he actually believed his counsel was pursuing his direct appeal, (2) his belief was objectively reasonable, and (3) he filed his state post-conviction relief petition within a reasonable time after he should have known that his counsel was not pursuing his direct appeal.

*Loveland v. Hatcher*, 231 F.3d 640, 644 (9th Cir.2000) (citing *Flores-Ortega*, 528 U.S. 470) (emphasis in original).

But even assuming that Davis could satisfy the *Loveland* factors enumerated above, which does not appear from the record, Davis nonetheless cannot establish that appellate counsel rendered ineffective assistance in this case. In *Wainwright v. Torna*, 455 U.S. 586 (1982) (per curiam), a habeas petitioner asserted that he had been denied his right to the effective assistance of counsel because his application for certiorari—filed by retained counsel in the Florida Supreme Court to review the Florida District Court of Appeal's affirmance of his state conviction—had been dismissed as untimely filed. The Supreme Court rejected that argument, concluding that, because a state criminal defendant has no constitutional right to counsel when pursuing a discretionary state appeal, he has no Fourteenth Amendment right to the effective assistance of counsel when pursuing that appeal.[5] *Id.* at 587-88 (citing *Ross v. Moffitt*, 417 U.S. 600 (1974) (holding that a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in the Supreme Court)). Because review in the Alaska Supreme Court is wholly discretionary, like in Florida, it cannot be said that Davis was entitled to the right of effective assistance of counsel with respect to his petition for review on direct appeal. Consequently, Davis could not have been deprived of the effective assistance of counsel by his appointed appellate counsel's failure to file a timely petition for hearing in that court. *Wainwright*, 455 U.S. at 587-88; *cf. Miller v. Keeney*, 882 F.2d 1428, 1432 (9th Cir. 1989) (holding that *Torna* barred ineffective assistance claim based on appointed direct appellate counsel's incorrect advice not to file a discretionary petition for writ of certiorari in the U.S. Supreme Court).

---

[5] Importantly, the due process clause guarantees a criminal defendant the right to effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1985). Accordingly, Davis was guaranteed the effective assistance of counsel with respect to his direct appeal filed in the Alaska Court of Appeals, which was of right. The Supreme Court made clear in *Ross v. Moffitt*, however, that the right to direct appellate counsel terminates after the conclusion of that appeal as of right; it does not extend to the period between losing a direct appeal and filing for state discretionary review. 417 U.S. at 616-118.

## V. CONCLUSION AND ORDER

Davis's Petition is untimely and without merit.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 17, 2021.

s/James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
Senior United States District Judge